# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2016

Lyle W. Cayce
Clerk

No. 15-30592

YOLANDE BURST, Individually, and as the Legal Representative of Bernard
Ernest Burst, Jr.,

      Plaintiff - Appellant

v.

SHELL OIL COMPANY; CHEVRON USA, INCORPORATED; TEXACO,
INCORPORATED,

      Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-109

Before SOUTHWICK and COSTA, Circuit Judges, and OZERDEN*, District
Judge.

PER CURIAM:**

---

  * District Judge of the Southern District of Mississippi, sitting by designation.

  ** Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th
Cir. R. 47.5.4.

No. 15-30592

Yolande Burst, proceeding both individually and as the legal representative of Bernard Ernest Burst, Jr., appeals the district court's orders excluding her general causation experts, Dr. Robert Harrison and Dr. Peter Infante, and granting summary judgment in favor of Defendants. We AFFIRM.

## I. BACKGROUND

Yolande Burst ("Plaintiff") alleges that her late husband, Bernard Ernest Burst, Jr. ("Mr. Burst"), worked at various gas stations from 1958 through 1971, during which time he regularly used products manufactured, supplied, distributed, and sold by Defendants Shell Oil Company, Chevron USA, Inc., and Texaco, Inc. (collectively, "Defendants"). Specifically, Plaintiff alleges that her husband regularly came into contact with gasoline containing benzene. In June 2013, physicians diagnosed Mr. Burst with acute myeloid leukemia ("AML"). He passed away as a result of AML on December 21, 2013.

Plaintiff claims that her husband's regular exposure to gasoline containing benzene during the years he worked as a gas station attendant and mechanic caused his AML. She asserts that Defendants negligently manufactured and sold products containing benzene and that they negligently failed to warn foreseeable users about the health hazards associated with these products.

The district court found that the question of whether exposure to gasoline and/or benzene could cause leukemia was not "common knowledge," thus expert testimony was required to resolve the issue of general causation. The district court further concluded that the proper general causation inquiry was whether exposure to gasoline containing benzene can cause AML, not whether exposure simply to benzene can cause AML, because the substance to which Mr. Burst was allegedly exposed was gasoline, not pure benzene.

2

No. 15-30592

During the course of discovery, Plaintiff designated Dr. Robert Harrison ("Dr. Harrison") and Dr. Peter Infante ("Dr. Infante") as expert witnesses.  Dr. Harrison is a medical doctor certified in occupational and internal medicine, and Dr. Infante is an epidemiologist.

On February 10-11, 2015, the district court conducted *Daubert* hearings on the general causation opinions of Dr. Infante and Defendants' experts, Dr. Ethan Natelson and Dr. David Pyatt.  On June 9, 2015, the district court granted Defendants' Motion to Exclude the testimony of Dr. Harrison on the issue of AML caused by exposure to benzene because his general causation opinions were unreliable.  In a thorough and well-reasoned 45-page opinion entered on June 16, 2015, the district court also granted Defendants' Motion to Exclude the testimony of Dr. Infante on the issue of general causation on grounds that his opinions were based upon an unreliable methodology.

Based upon the exclusion of Plaintiff's general causation experts, the district court granted summary judgment in favor of Defendants on June 29, 2015, and entered its Judgment dismissing the case with prejudice on July 2, 2015.  The present appeal followed.  Plaintiff contends that the district court abused its discretion in striking her experts, Dr. Harrison and Dr. Infante, and as a result erred in granting summary judgment.

## II. DISCUSSION

### A.  Standard of Review

"We review a grant of summary judgment de novo, applying the same standard as the district court and viewing the evidence in the light most favorable to the non-moving party." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 895 (5th Cir. 2013) (citation omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

No. 15-30592

We review a district court's evidentiary rulings under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), for abuse of discretion. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 458 (5th Cir. 2012). A district court "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (quotation omitted). Under Rule 702 and *Daubert*, the district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion, and has considerable leeway in deciding both how to test the reliability of evidence and then in making that determination. *Id.* at 458-59.

"[T]here is a two-step process in examining the admissibility of causation evidence in toxic tort cases." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). The district court must first determine whether there has been a showing of general causation, which "is whether a substance is capable of causing a particular injury or condition in the general population . . . ." *Id.* (quotation omitted). If the district court "concludes that there is admissible general-causation evidence, [it] must determine whether there is admissible specific-causation evidence." *Id.* (citation omitted). "[S]pecific causation is whether a substance caused a particular individual's injury." *Id.* (quotation omitted). Here, the district court did not reach the issue of specific causation because it found that Plaintiff failed to establish general causation.

## B. Analysis

### 1. Dr. Harrison

The district court excluded Dr. Harrison's general causation report and testimony because, in its view, Dr. Harrison's opinions left too great an analytical gap between the data upon which he relied and the opinions he proffered, making his opinions unreliable. The district court found that: (1)

No. 15-30592

Dr. Harrison made no attempt to demonstrate why benzene-specific studies could reliably support his conclusion that gasoline can cause AML, or to explain or demonstrate how he extrapolated his findings with respect to gasoline from benzene studies; (2) Dr. Harrison failed to cite to any gasoline-specific literature; and (3) Dr. Harrison's "me too" approach in relying on Dr. Infante's report lacked any independent analysis and was therefore unreliable.

While "[t]rained experts commonly extrapolate from existing data," the Supreme Court has held that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In such a situation, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

We cannot say that it was an abuse of discretion for the district court to conclude that Dr. Harrison's opinions were unreliable. As the district court noted, the scientific literature Dr. Harrison relied upon in preparing his report considered benzene, rather than gasoline containing benzene. Dr. Harrison made no attempt to demonstrate how benzene-specific studies could reliably support his conclusion that gasoline containing benzene can cause AML, or to explain or demonstrate how he extrapolated his findings with respect to gasoline from the benzene studies. Further, Dr. Harrison did not refer to any gasoline-specific literature. The district court made specific and detailed findings with respect to these and other deficiencies in Dr. Harrison's opinions, and we cannot conclude from our review of the record that the district court's conclusions in this regard were an abuse of discretion. The district court's exclusion of Dr. Harrison's report and testimony will be affirmed.

5

## 2.  Dr. Infante

The district court struck Dr. Infante's general causation report and testimony on grounds that Dr. Infante's opinions were based on an unreliable methodology and left too great an analytical gap between the underlying data and his opinions.  The district court reasoned that:  (1) Dr. Infante relied on studies of benzene, a known carcinogen, for the proposition that exposure to benzene can cause AML, when the relevant issue in the case was whether exposure to gasoline containing benzene can cause AML;[1] and (2) Dr. Infante's methodology failed as to those gasoline-specific studies upon which he did rely because he:  (a) relied on studies that did not isolate gasoline exposure or that did not provide exposure metrics; (b) relied  on  studies  that did not exhibit statistically significant results; (c) relied on studies that did not examine AML; and (d) cherry-picked data from studies and failed to explain contrary results that belied the reliability of his methodology.

Dr. Infante testified at the *Daubert* hearing.  Following the hearing, the district court issued a lengthy Order containing an extremely thorough and well-reasoned analysis detailing its reasons for striking Dr. Infante's testimony.   The  district  court  did  not  question  Dr.  Infante's  expert qualifications, but found that Dr. Infante's general causation opinions were not grounded in a reliable methodology because he relied on multiple studies that did not reliably support his conclusions.  The district court ultimately determined  that  there  was  too  great  an  analytical  gap  between  the

---

[1] Dr. Infante's assumption in his report was that "Mr. Burst was exposed to gasoline containing an average of 2.0% benzene between 1958 and 1971."  R. at 7158.  In granting Defendants' Motion to exclude Dr. Infante, the district court found that the benzene concentration of gasoline to which Mr. Burst could have been exposed "may have ranged from under 1% to as high as 4% or 5% between 1958 and 1971."  R. at 8031.  These low levels of concentration support a finding that it was not an abuse of discretion for the district court to distinguish between exposure to gasoline containing benzene and exposure to pure benzene.

underlying data and the opinions offered by Dr. Infante.  The district court did not abuse its discretion in this regard.

We recognize that this Court does not require "an expert [to] back his or her opinion with published studies that unequivocally support his or her conclusions." *Knight*, 482 F.3d at 354 (citations omitted).  "Nonetheless, the expert's testimony must be reliable at each and every step or else it is inadmissible." *Id.* at 354-55.  "District courts must carefully analyze the studies on which experts rely for their opinions before admitting their testimony." *Id.* at 355 (citing *Joiner*, 522 U.S. at 146-47).

Here, it was within the district court's discretion to conclude that the body of evidence upon which Dr. Infante relied was not sufficient to support his general causation opinions.  The majority of Dr. Infante's report was devoted to benzene exposure, rather than gasoline exposure.  As for the gasoline-specific literature upon which Dr. Infante did rely, the district court noted that a number of the studies did not isolate exposure to gasoline or did not provide the exposure metrics, did not exhibit statistically significant results or indicate a positive association between gasoline exposure and AML, and did not specifically examine AML as opposed to other forms of leukemia.

We cannot say that the district court's assessment of the evidence in this respect was clearly erroneous.  Nor can we conclude that the district court abused its discretion in determining that the studies relied upon by Dr. Infante were insufficient to support his conclusion that benzene-containing gasoline, which Plaintiff alleges caused Mr. Burst's injury, would cause the same particular injury in the general population.  For the reasons stated by the district court, we affirm the exclusion of Dr. Infante's opinions.

### 3. Summary Judgment

Plaintiff acknowledges that resolution of her contention that the district court erred in granting summary judgment turns entirely upon our

No. 15-30592

resolution of her appeal on the issue of the exclusion of Dr. Harrison and Dr. Infante's general causation opinions.[2]   Plaintiff does not appear to dispute that, without expert general causation testimony, summary judgment was proper. We agree.   Because we find that the district court did not abuse its discretion in excluding the opinions of Plaintiff's general causation experts, Dr. Harrison and Dr. Infante, we affirm the district court's grant of summary judgment in Defendants' favor.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[2] In her briefs and at oral argument, Plaintiff asserted that the district court failed to address her position that evidence of alleged chromosomal abnormalities suffered by Mr. Burst provided support for the general causation opinions of Dr. Harrison and Dr. Infante. Even assuming this evidence could lend support to a general causation theory as opposed to a specific causation theory, given the totality of the evidence before the district court and the breadth and depth of the district court's analysis, we cannot conclude that any failure to address Mr. Burst's alleged chromosomal abnormalities would by itself be enough to support a finding that the district court abused its discretion.